STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLANT, V. UNION INSURANCE COMPANY, APPELLEE.

147 N. W. 2d 760

Filed January 6, 1967. No. 36388.

Healey & Healey, for appellant.

Wilson, Barlow, Neff & Watson, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, and McCOWN, JJ., and FLORY, District Judge.

McCOWN, J.

A deer suddenly jumped onto a highway, and triggered a chain of events which destroyed an automobile, caused minor injuries to the occupants, and brought about this litigation involving complicated and conflicting contrac-

tual provisions in two separate automobile insurance policies.

Everett and Rita Winings had an automobile insurance policy on a 1960 Vauxhall automobile with the plaintiff, State Farm Mutual Automobile Insurance Company. On June 15, 1963, while the described automobile was undergoing repairs at a garage in O'Neill, Nebraska, the garage loaned a 1962 Pontiac Tempest automobile to the Winings. The garage carried no insurance on the Pontiac Tempest covering the loss which occurred. Charles Dobias carried an automobile insurance policy with Union Insurance Company on his automobile under which his son, Rodney Dobias, was an additional insured. That evening Rodney Dobias was driving the 1962 Pontiac Tempest with the permission of the Winings, lawfully in possession of the car. It was at this moment that the unfortunate deer jumped onto the highway. As a result of striking the deer, the 1962 Tempest was a total loss, and Rita and Richard Winings, the children of Everett and Rita Winings, and passengers in the automobile, received injuries requiring medical treament. Both insurance policies had collision, comprehensive, and medical coverage with limits in excess of the amount involved here. State Farm Mutual Automobile Insurance Company, the plaintiff here, paid the owner of the 1962 Pontiac Tempest the amount of the vehicle loss, and paid the medical bills relating to the injuries sustained by Rita and Richard Winings. After demand, this action against Union Insurance Company to recover one-half of the amounts paid followed. No issue of voluntary payment on the part of State Farm is here involved. The district court determined that the State Farm policy was primary and the Union policy excess and dismissed the action.

Relevant portions of the respective insurance policies are essential in determining the issue. The applicable portions of the State Farm policy provide: "The Company * * * agrees with the insured * * * subject to the provisions of the policy: * * *

"Coverage C—Medical Payments. To pay reasonable medical expenses incurred * * *

"Coverage D—Comprehensive (1) To pay for loss to the owned automobile except loss caused by collision * * *

"Coverage G—* * * Collision. To pay for loss to the owned automobile caused by collision * * *

"Definitions.

"Owned Automobile—means the private passenger automobile * * * described in the declarations and includes a temporary substitute automobile * * *

"Temporary Substitute Automobile—means an automobile not owned by the named insured while temporarily used as a substitute for the described automobile when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

"Conditions.

"Other Insurance. * * * All of the foregoing provisions and all coverages are subject to the following: * * *

"(b) The insurance with respect to a temporary substitute automobile * * * and a non-owned automobile shall be excess over other collectible insurance."

The applicable portions of the Union policy provide: "Union Insurance Company * * * Agrees with the insured * * * subject to all of the terms of this policy:

"Coverage C—Medical Payments: To pay all reasonable expenses incurred * * *

"Division 2. To or for any * * * person who sustains bodily injury, caused by accident, while occupying * * * (b) a non-owned automobile, if the bodily injury results from (1) its operation or occupancy by the named insured * * *, or (2) its operation or occupancy by a relative * * *, but only if such operator or occupant has, or reasonably believes he has, the permission of the owner to use the automobile * * *.

"Other Insurance: If there is other automobile medical payments insurance against a loss covered * * * the company shall not be liable under this policy for a great-

er proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible automobile medical payments insurance; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible automobile medical payments insurance.

"Coverage D (1)—Comprehensive * * * (1)  To pay for loss caused other than by collision to the owned automobile or to a non-owned automobile.  For the purpose of this coverage * * * colliding with a bird or animal, shall not be deemed to be loss caused by collision. * * *

"Other Insurance:  If the insured has other insurance against a loss covered by Part III of this policy (Comprehensive above) the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability of this policy bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

Both policies obviously provide coverage for the loss involved, but both policies purport to make their coverage "excess" under the situation involved.  Both policies then literally construed, are excess; in the case of one policy because it was a "temporary substitute" automobile and in the other because it was a "non-owned" automobile.

The specific question before the court is whether, under such circumstances, one policy becomes the "primary" coverage and stands the entire loss or whether the "excess" coverages in both policies are mutually repugnant, and the carriers share the coverage and the loss.  This issue is one of first impression here.

"Other insurance" clauses, where there are two or more automobile policies which may provide coverage

for a particular event, have received a great deal of judicial consideration. There are all sorts and varieties of such clauses which have sometimes been generally classified as "pro rata" clauses; "no liability" clauses; and "excess insurance" clauses. As indicated by the court in Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 195 F. 2d 958, judicial decisions attempting to determine which policy is primary and which is secondary in substantially identical disputes "point in all directions."

In 7 Am. Jur. 2d, Automobile Insurance, §§ 200 and 202, pp. 542 to 545, it is indicated that distinctions must be made and have been made in cases involving different types of "other insurance" clauses.

The conflict in interpretation between an "excess" insurance clause in one policy and the same or a similar "excess" insurance clause in another policy represent merely one segment of a very wide field of conflict of liability between liability carriers. See Annotation, 69 A. L. R. 2d 1122, and the cases there cited and discussed.

The appellee in this case endeavors to classify the State Farm coverage as to comprehensive liability in the same category as specific ownership coverage, and therefore "primary" since an "owned" automobile is defined as including a temporary substitute automobile. They argue that since Rodney Dobias was not within the definition of an insured under the State Farm policy as to comprehensive or collision, the State Farm coverage was on the car and not the driver. He was, however, within the definition of an insured within the medical payments coverage. The Union policy as to comprehensive coverage, however, extended to either an owned or nonowned vehicle, under the circumstances here. It is also argued that the Union policy is not "other collectible insurance" within the terms of the State Farm policy. These approaches attempt to give the restrictive clause of one policy prior or primary effect and rely upon somewhat circular reasoning in which one of two policies

affording coverage upon different hypotheses will be deemed "specific" and therefore "primary." The "excess" clauses in both of the policies involved here are almost identical. The automobile involved was not the "described" automobile in either of the policies. Although expressed in varying language, it seems to us clear that each company intended that if there were other insurance covering the loss, its coverage would be "excess." Both policies evidence the same intent with respect to insuring the risk and also with respect to avoiding liability in the event of adequate coverage by another carrier. If literal effect were given to the clauses in both policies, the result would be that neither policy covered the loss, and thus produce an unintended absurdity. It seems to us more important that each company in drafting its policy contemplated various types of situations which were likely to arise where the operation of a vehicle would probably be covered by other insurance.

We can find no reason to give absolute effect to a provision in one policy while ignoring a similar provision in the other. Both clauses in both policies in a situation such as this should occupy the same legal status.

The excess insurance provisions are mutually repugnant and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the general coverage of each policy applies and each company is obligated to share in the loss. Cosmopolitan Mut. Ins. Co. v. Continental Cas. Co., 28 N. J. 554, 147 A. 2d 529, 69 A. L. R. 2d 1115, and cases there cited. See, also, 7 Am. Jur. 2d, Automobile Insurance, § 202, p. 545; Annotation, 69 A. L. R. 2d 1122, et seq.

Where the coverage of one insurance company under an automobile insurance policy is "excess" insurance because the automobile involved in an accident was a "temporary substitute" automobile, and the coverage of an-

other insurance company is "excess" insurance because the same automobile was a "non-owned" automobile, and both policies otherwise provide coverage for the loss involved, the "excess" insurance provisions are mutually repugnant, the general coverage of each policy applies, and each company is obligated to share in the loss.

The problem of determining the method of prorating the loss is not directly presented here since there is no evidence as to the exact amount of coverage of each policy nor of the premiums paid, but only that each is more than sufficient. In any event, we conclude that where both companies stand on an equal footing, equity requires an equal apportionment of the loss.

For the reasons stated, the judgment of the trial court was in error, and the judgment is reversed and the cause remanded with instructions to enter judgment for the plaintiff.

REVERSED AND REMANDED WITH DIRECTIONS.