LeRoy H. Cordes, APPELLANT, v. The Prudential
Insurance Company of America, APPELLEE.
150 N. W. 2d 905

Filed May 26, 1967. No. 36496.

Homer E. Hurt, Jr., for appellant.

Young, Holm, McEachen & Hamann and Vard R. Johnson, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and MURPHY, District Judge.

McCOWN, J.

This was an action at law to recover medical expense benefits under a policy of insurance. A motion for summary judgment for the defendant insurance company was sustained and the plaintiff has appealed.

On August 15, 1964, the defendant Prudential Insurance Company of America issued to the plaintiff LeRoy H. Cordes, a policy of insurance providing life insurance benefits for the plaintiff, accidental death and dismemberment benefits for the plaintiff, nonoccupational vehicle accidental death benefits for the plaintiff, and extended medical benefits for plaintiff and plaintiff's covered dependents as defined in the policy.

Roger Cordes was the son of plaintiff, 20 years old and unmarried, and dependent upon his father for support and maintenance. On June 6, 1964, Roger Cordes became ill and from June 9 to 12, and from June 15 to 21, 1964, was hospitalized for diagnostic purposes. The

diagnosis made was seminoma of testes with metastic lesions to the neck (a more particularized expression for carcinoma of the testes, metastic, which is a form of cancer). On various dates from June 8 through June 21, charges were incurred for examinations and biopsies upon Roger Cordes. From June 22, 1964, to August 12, 1964, excepting weekends, Roger Cordes was treated with telecobalt therapy treatments and charges were incurred for these services. On or about September 15, 1964, Roger Cordes was admitted as a patient in Dodge County Community Hospital with his condition diagnosed as carcinoma of testes, metastic, and later hospitalized at Nebraska Methodist Hospital in Omaha for the same condition. Roger Cordes died January 4, 1965. Medical expenses were also incurred during the period September 15, 1964, to the date of his death and these medical expenses incurred were all for the same illness.

The plaintiff's claim was for a portion of the medical expenses he had incurred for the illness of Roger Cordes. The defendant asserted three defenses, but moved for summary judgment only on the second defense. The second defense was based on what might be termed a 90-day preexisting condition limitation or exclusion.

The particular portions of the contract directly involved are those under Part EM, Extended Medical Expense Benefits. The first paragraph of Part EM provides: "The benefits of this Part EM are payable with respect to service and supply charges incurred for medical care and treatment of the Insured or a covered dependent deemed necessary by a licensed physician, in accordance with the following provisions of this Part EM and the applicable provisions of this Policy pertaining to claims."

Section F of Part EM is headed "Eligible Charges." The first 11 numbered paragraphs of section F describe various kinds of medical services and supply charges.

Paragraph (12) of section F provides: *"Charge limitations for certain illnesses*: The extent to which charges

are included above is limited as follows—

"(a)   Charges incurred in connection with mental illnesses or functional nervous disorders of any type or cause of a person will be included only to the following extent—* * *.

"(b)   Charges incurred in connection with pregnancy including resulting childbirth, abortion or miscarriage will be included only to the following extent— * * *.

"(c)   Charges incurred in connection with an illness of a person with respect to which medical expenses (including hospital, nursing and supplies of any kind) were incurred during the ninety days immediately prior to the date the person becomes covered for benefits under this Part EM will be included only to the following extent—

"Charges included are those incurred after the first to occur of (i) the first continuous period of ninety days ending on or after the date the person becomes covered for benefits under this Part EM during which period no such medical expenses were incurred in connection with that illness, and (ii) the end of the one year period commencing on the date the person becomes covered for the benefits under this Part EM."

Paragraph (13) of section F provides:   *"Non-eligible charges*:   In any event, the eligible charges will not include any charges incurred— * * *."

It is the plaintiff's position that the contract contains ambiguities and should be construed against the insurance company which drew it.   Boiled down to its essence, the plaintiff claims that the particular language involved in paragraph (12) of section F should have been set out or emphasized as an exclusion or limitation rather than carrying a paragraph number under section F, and that its position in the policy requires the policy to be read as a reasonable person in the position of the insured would have read and understood it.

Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the

terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in plain, ordinary, and popular sense. U. P. Terminal F.C.U. v. Employers Mutual Liability Ins. Co., 172 Neb. 190, 109 N. W. 2d 115.

In construing an insurance contract, the court must give effect to the instrument as a whole and, if possible, to every part thereof. Mills v. Aetna Ins. Co., 168 Neb. 612, 96 N. W. 2d 721.

The language here is plain and unambiguous and the court will not read an ambiguity into plain language in order to construe it against the one who prepared the contract. Pickens v. Maryland Casualty Co., 141 Neb. 105, 2 N. W. 2d 593.

For purposes of defendant's second defense, which was the only one at issue here, it is conceded that Roger Cordes was a covered dependent as of the effective date of the policy, and that there was no deferment of the dependent's coverage because of disability. These issues were raised in the defendant's other defenses. As to the defendant's second defense, there was no genuine issue as to any material fact pertaining to that defense.

The construction of a written contract is ordinarily a question of law for the court. Omaha Public Power Dist. v. Traveler's Indemnity Co., 178 Neb. 709, 135 N. W. 2d 1; Bishop Cafeteria Co. v. Ford, 177 Neb. 600, 129 N. W. 2d 581.

The district court properly found that defendant was entitled to summary judgment on its second defense as a matter of law.

AFFIRMED.