MARGARET A. POLENZ, PERSONAL REPRESENTATIVE OF THE ESTATE OF KENNETH R. POLENZ, DECEASED, APPELLEE, V. FARM BUREAU INSURANCE COMPANY OF NEBRASKA, A NEBRASKA CORPORATION, APPELLANT.

419 N.W.2d 677

Filed February 26, 1988. No. 87-282.

Thomas A. Otepka of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellant.

Edward F. Pohren of Dwyer, Pohren, Wood, Heavey & Grimm, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

SHANAHAN, J.

Margaret A. Polenz, personal representative of the estate of Kenneth R. Polenz, deceased, brought a declaratory judgment action against Farm Bureau Insurance Company of Nebraska to determine the amount payable under each of two Farm Bureau policies owned by Kenneth Polenz, which provideu underinsured motorist coverage. On stipulated facts, the district court for Sarpy County entered a declaratory judgment concerning Farm Bureau's policies and then granted the personal representative judgment against Farm Bureau for $75,000, interest, and an attorney fee. Farm Bureau appeals.

Kenneth Polenz was a passenger in an automobile driven by a

Jim Collom, who fell asleep while driving, causing a one-car accident when Collom's automobile struck an embankment adjacent to the road on which the Collom vehicle was being operated. Polenz died as a result of injury sustained in the accident.

Collom was the owner and named insured of an automobile insurance policy issued by State Farm Insurance, which provided Collom with $25,000 in liability coverage for bodily injury caused by his operating a vehicle. Collom's State Farm policy also provided medical payment coverage of $2,500. Outside the liability coverage for bodily injury and the medical payment coverage, there was no coverage under Collom's policy from which any damages caused by Collom could be paid to Polenz.

In exchange for the personal representative's covenant not to sue Collom, State Farm paid the personal representative $27,500, that is, $25,000 on the Polenz bodily injury claim and $2,500 on the claim pertaining to medical payment coverage. The personal representative received no other payments from or on behalf of Collom.

At the time of his death, Kenneth Polenz owned two policies issued by Farm Bureau. Those policies were obtained at different times, and the premium for each policy was separately paid by Polenz. Policy No. 103385 on a 1983 Ford pickup and policy No. 651962 on a 1983 Lincoln Town Car contained "COVERAGE L UNDERINSURED MOTORIST COVERAGE" (UDM), with a $50,000 limit on each policy for the underinsured motorist coverage. In the pertinent parts of the Farm Bureau policies, coverage L, or the UDM coverage, provides:

Our Limit of Liability

The amount shown in the declarations for . . . Coverage L "per person" is the maximum amount *we* will pay for all damages due to bodily injury sustained by any one person in any one automobile accident. . . . [The maximum amount] shall be reduced by any amount paid or payable under any valid and collectible insurance policy or bond providing bodily injury liability coverage for the ownership, maintenance or use of the uninsured motor

vehicle or underinsured motor vehicle involved in the accident. [The maximum amount] shall also be reduced by any other payment made by or on behalf of the owner or operator of the uninsured motor vehicle or underinsured motor vehicle. [The reduced amount] shall be our maximum limit of liability regardless of the number of:

1. Insureds;

2. claims made;

3. vehicles or premiums shown in the declarations; or

4. vehicles involved in the accident.

. . . .

Other Insurance

If there is other applicable similar insurance:

1. That applies to an insured injured while occupying any vehicle you do not own:

a. The coverage afforded by this part shall apply only as excess coverage to the primary coverage;

b. such excess coverage shall be limited to the amount by which the coverage afforded by this part exceeds the primary coverage; and

c. when more than one policy applies as excess:

(1) The amount by which the highest limit of liability of any one of the policies applying as excess exceeds the Limit of Liability of the primary policy shall be determined;

(2) *we* shall pay *our* share of that amount. *Our* share is the proportion that *our* Limit of Liability is of the sum of the Limits of Liability of all the other policies applying as excess.

(Emphasis in original.)

The amount of damages from the wrongful death of Kenneth Polenz is substantially in excess of the declared limits of the coverage in all applicable policies of insurance available concerning Kenneth Polenz, including the limits of Collom's bodily injury liability insurance.

Farm Bureau refused to pay the personal representative's demand for $75,000, that is, the total of the coverage from both policies or $100,000 less the $25,000 received from State Farm on the claim against Collom. The personal representative then filed her declaratory judgment action, asking for

determination of the amount due under each of Farm Bureau's policies.

In its declaratory judgment, the district court found that the "other insurance" provision under Farm Bureau's UDM coverage was inapplicable in determining the limit of liability under each of Farm Bureau's policies. The district court then proceeded to determine and declare that Farm Bureau's aggregate liability on its policies was $75,000, which was determined as follows: $50,000 on each policy, reduced by a pro rata amount paid on the claim against Collom, that is, one-half of $25,000, or $12,500, leaving Farm Bureau's net liability on each policy in the amount of $37,500. Since there were two policies, the combined liability for both policies was $75,000. After entry of the declaratory judgment and pursuant to Neb. Rev. Stat. § 25-21,156 (Reissue 1985), the personal representative obtained a monetary judgment against Farm Bureau in the amount of $75,000. Farm Bureau has appealed the declaratory judgment and the monetary judgment awarded to the personal representative.

As this court stated in *Cordes v. Prudential Ins. Co.*, 181 Neb. 794, 797-98, 150 N.W.2d 905, 908 (1967):

Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in plain, ordinary, and popular sense. [Citation omitted.]

In construing an insurance contract, the court must give effect to the instrument as a whole and, if possible, to every part thereof. [Citation omitted.]

. . . .

The construction of a written contract is ordinarily a question of law for the court. [Citations omitted.]

In *Boisen v. Petersen Flying Serv.*, 222 Neb. 239, 241, 383 N.W.2d 29, 31 (1986), we held: "Regarding a question of law, this court has an obligation to reach its conclusion independent from the conclusion reached by a trial court."

Other rules for construction of an insurance policy were stated in *Malerbi v. Central Reserve Life*, 225 Neb. 543, 550-51, 407 N.W.2d 157, 162-63 (1987):

An insurance policy is to be construed as any other contract to give effect to the parties' intentions at the time the contract was made. *Waylett v. United Servs. Auto. Assn.*, 224 Neb. 741, 401 N.W.2d 160 (1987). Where the terms of such a contract are clear, they are to be accorded their plain and ordinary meaning. *Waylett, supra.* On the other hand, where a clause in an insurance contract can be fairly interpreted in more than one way, there is ambiguity to be resolved·by the court as a matter of law. *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 334 N.W.2d 463 (1983). Our rules of construction require that in the case of such ambiguities, the construction favorable to the insured prevails so as to afford coverage. *Denis, supra.* This rule has evolved from recognition of the fact that the insurer as drafter of the policy is responsible for the language creating the ambiguity. See, *Denis, supra; Dale Electronics, Inc. v. Federal Ins. Co.*, 205 Neb. 115, 286 N.W.2d 437 (1979).

The resolution of an ambiguity in a policy of insurance turns not on what the insurer intended the language to mean, but what a reasonable person in the position of the insured would have understood it to mean at the time the contract was made. *Denis, supra.*

In its first assignment of error, Farm Bureau claims that the entire amount received on the claim against Collom, $25,000, must be deducted from the limit of liability on each of Farm Bureau's policies, which would then leave $25,000 due under each of its policies, or a total of $50,000 payable to the personal representative.

The personal representative argues:

It is apparent from this clause that the State Farm payment must be deducted to determine the maximum liability which Appellant has to Appellee. . . . [I]t is not clear (a) whether the total of all underinsured motorist coverages may first be aggregated or stacked before the deduction for the State Farm payment is made [by aggregating the two coverages, the total limit of liability would be $100,000, and after deduction for the State Farm payment, the reduced limit of liability would be

$75,000 under both policies] or (b) whether the State Farm payment should be prorated among all of the policies providing underinsured motorist coverages [by prorating the State Farm payment $12,500 to each policy, the limits of liability would be reduced from $50,000 to $37,500 under each coverage], or (c) whether the State Farm payment should be deducted in full from each policy [which would reduce each of the limits of liability from $50,000 to $25,000 of coverage].

Brief for Appellee at 7.

The limit of liability, stated in each of Farm Bureau's policies in the present case, provides that the maximum amount payable under the policy, $50,000, shall be reduced by the amount paid under any insurance policy providing bodily injury liability coverage on the underinsured motor vehicle, which in this case was $25,000 paid under Collom's State Farm policy. The limit of liability provision in the underinsured motorist coverage found in each of Farm Bureau's policies does not contain a requirement or formula for allocating any amount paid as the result of bodily injury coverage from another insurer, when there are multiple Farm Bureau policies applicable to a particular automobile accident. " 'An ambiguity will not be read into policy language which is plain and unambiguous in order to construe it against the preparer of the contract.' " *Waylett v. United Servs. Auto. Assn.*, 224 Neb. 741, 745, 401 N.W.2d 160, 163 (1987) (citing and quoting from *Lumbard v. Western Fire Ins. Co.*, 221 Neb. 804, 381 N.W.2d 117 (1986)). "Absent ambiguities, language in a policy of insurance is to be given its plain and ordinary meaning." *Boren v. State Farm Mut. Auto. Ins. Co.*, 225 Neb. 503, 508, 406 N.W.2d 640, 644 (1987). See, also, *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. 765, 366 N.W.2d 417 (1985); *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40 (1985).

In *Waylett v. United Servs. Auto. Assn., supra* at 743, 401 N.W.2d at 162, we construed the following provision in an automobile policy providing underinsured motorist coverage: " 'However, the limit of liability shall be *reduced* by *all sums* paid because of the bodily injury by or on behalf of *persons or organizations* who *may be* legally responsible.' " (Emphasis in

original.) In *Waylett*, the policy had a $300,000 limit of liability, and Waylett received $325,000 from persons who might have been responsible for the injuries suffered in an automobile accident. When the payments to the insured were applied against the $300,000 limit of liability under the policy which provided underinsured motorist coverage in *Waylett*, we held that "the liability under the policy is reduced to zero, and there is no sum due and owing from [the insurer] to the Wayletts." 224 Neb. at 747, 401 N.W.2d at 164. Although *Waylett* involved only one policy providing underinsured motorist coverage and several payments from others who might have been legally liable for damages to Wayletts, the reason for the reduction required in *Waylett* is equally applicable in the present case in view of the clear and unambiguous language used to limit liability in each of Farm Bureau's policies providing underinsured motorist coverage.

The personal representative suggests it would be a windfall to Farm Bureau to allow the $25,000 State Farm payment to be deducted from the limit of liability under each of the Farm Bureau policies. The personal representative argues "[a] reasonable person in the position of the insured would not expect that the setoff for amounts paid by the tort-feasor would exceed the amount actually paid by the tort-feasor, regardless of the number of insurers providing [UDM] coverage." Brief for Appellee at 13. We disagree. An insurer may limit its liability by contract as long as it does not violate public policy, and there is no Nebraska public policy requiring stacking. See, *Kracl v. Aetna Cas. & Surety Co., supra; Charley v. Farmers Mut. Ins. Co., supra*. Nor do we find it against public policy for an insurer to reduce its limit of liability under each policy by amounts paid to its insured on behalf of an underinsured tort-feasor, when the insured seeks to aggregate or stack multiple policies of insurance providing underinsured motorist coverage. Cf. *Waylett v. United Servs. Auto. Assn., supra*. "Any argument that to disallow the aggregation of multiple uninsured motorist coverages gives the insurer a windfall overlooks the fact that the nature and extent of the protections sold by the insurer and purchased by the insured, and the charges made for them, are determined by the policy language."

*Charley v. Farmers Mut. Ins. Co., supra* at 771, 366 N.W.2d at 421-22. "Thus, the party's reasonable expectation of coverage is to be measured not by premiums paid but by the clear terms of the insurance policy as understood by the reasonable, ordinary man." *Kracl v. Aetna Cas. & Surety Co., supra* at 874-75, 374 N.W.2d at 44. *Kracl* and *Charley* involved uninsured motorist coverage, but the rationale of *Kracl* and *Charley* applies as well to the underinsured motorist coverage in the case before us. The policy language contained in the limit of liability provisions of each Farm Bureau policy in this case clearly requires that the maximum amount otherwise available under each policy concerning underinsured motorist coverage shall be reduced by the amount paid under Collom's State Farm policy.

We note that the Underinsured Motorist Insurance Coverage Act, Neb. Rev. Stat. §§ 60-571 to 60-582 (Cum. Supp. 1986), became operative on January 1, 1987. This act was not in effect at the time Farm Bureau issued its policies with underinsured motorist coverage to Kenneth Polenz. Thus, the policies involved in this litigation were the result of negotiations between the parties, and the clear and unambiguous policy provisions will be enforced according to their plain and ordinary meaning. See *Waylett v. United Servs. Auto. Assn.*, 224 Neb. 741, 401 N.W.2d 160 (1987).

If plain and ordinary meaning is given to the provision for reduction of the amount payable under the underinsured motorist coverage of Farm Bureau's policies in these proceedings, there is no contractual basis for dividing or allocating the State Farm payment between the two Farm Bureau policies to determine the amounts payable thereunder. When the district court divided the State Farm proceeds equally between the Farm Bureau policies, that pro rata division lacked foundation in the policy provisions for underinsured motorist coverage afforded by Farm Bureau and, therefore, was contrary to the clear policy provisions and is incorrect. For that reason, we must reduce the amount payable under the underinsured motorist coverage in this case to $25,000 under each of Farm Bureau's policies, for a total underinsured motorist coverage of $50,000 payable to the personal

representative in this case.

As its second assignment of error, Farm Bureau claims there was "other insurance" which necessitates still further reduction of the amount payable under the underinsured motorist coverage in each of its policies. Farm Bureau argues that Collom's State Farm policy was the primary coverage on the Polenz claim and, therefore, the two Farm Bureau policies provided only excess coverage.

The policy provision in question is found in Farm Bureau's underinsured motorist coverage, under the heading "Other Insurance," as follows: "If there is other applicable *similar* insurance: 1. That applies to an *insured* injured while occupying any vehicle you do not own: a. The coverage afforded by this part shall apply only as excess coverage to the primary coverage . . . ." (Emphasis supplied.) Farm Bureau's policy does not define "other applicable similar insurance." *Similar* means "having characteristics in common: very much alike: comparable . . . alike in substance or essentials: corresponding." Webster's Third New International Dictionary, Unabridged 2120 (1981). In the absence of any definition pertaining to that clause, it is unclear whether the clause in question relates to any other insurance relative to bodily injury or only to other underinsured motorist coverage pertaining to bodily injury. Thus, the clause "other applicable similar insurance" is ambiguous, and we will resolve such ambiguity by construing the clause favorably to the insured, here the personal representative, so as to afford coverage. See, *Malerbi v. Central Reserve Life*, 225 Neb. 543, 407 N.W.2d 157 (1987); *Denis v. Woodmen Acc. & Life Co.*, 214 Neb. 495, 334 N.W.2d 463 (1983). We construe "other applicable similar insurance" in Farm Bureau's underinsured motorist coverage to mean other insurance which provides underinsured motorist coverage. Collom's policy with State Farm did not provide underinsured motorist coverage to Kenneth Polenz. Farm Bureau asserts "[t]here is no requirement that the primary insurance (State Farm) also provide underinsured motorist coverage to the Plaintiff for the Other Insurance provision to apply." Reply brief for Appellant at 10. However, in resolving an ambiguity in an insurance policy, the guiding principle is not what the insurer

intended the language to mean, but what a reasonable person in the position of the insured would have understood it to mean. *Malerbi, supra; Denis, supra.* Since the "Other Insurance" clause can reasonably be understood as referring only to other underinsured motorist coverage as primary coverage, the State Farm policy, which provided no underinsured motorist coverage, is not "other applicable similar insurance" and, therefore, is not a policy providing primary coverage under the circumstances.

We realize that insurance on a vehicle in which the claimant is a passenger or a driver is, generally, considered as primary insurance coverage. See, *Turpin v. Standard Reliance Ins. Co.,* 169 Neb. 233, 99 N.W.2d 26 (1959); *Jones v. Morrison,* 284 F. Supp. 1016 (W.D. Ark. 1968); 7A Am. Jur. 2d *Automobile Insurance* § 434 (1980). In this case, however, State Farm provided no underinsured motorist coverage and, in fact, provided no insurance coverage whatsoever to Kenneth Polenz. State Farm paid $25,000 to the personal representative because there was a bodily injury claim against Collom, not because Kenneth Polenz was a State Farm insured. Thus, the State Farm policy did not provide primary coverage in this case.

However, each of the Farm Bureau policies did provide underinsured motorist coverage to Kenneth Polenz while he was an occupant in Collom's automobile, and, consequently, each policy was "other applicable similar insurance." A problem arises, since each Farm Bureau policy designates the other as the policy providing primary coverage. Even if one of the Farm Bureau policies could be designated as primary and the other as excess and since the limit of liability under each is equal, a literal interpretation of paragraphs 1b and 1c under "Other Insurance" would negate the underinsured motorist coverage for Polenz. The general rule is stated in 7A Am. Jur. 2d, *supra* at 87-88:

> [W]here two or more policies provide coverage for the particular event and all the policies in question contain "excess insurance" clauses—it is generally held that such clauses are mutually repugnant and must be disregarded, rendering each company liable for a pro rata share of the judgment or settlement, since, if literal effect were given to

both "excess insurance" clauses of the applicable policies, neither policy would cover the loss and such a result would produce an unintended absurdity.

*State Farm Mut. Auto. Ins. Co. v. Union Ins. Co.*, 181 Neb. 253, 147 N.W.2d 760 (1967), involved two automobile insurance policies issued by different companies. The automobile owners had a policy with State Farm on an auto which needed repairs. An uninsured substitute vehicle was loaned to the State Farm insureds while their auto was being repaired. The loaned vehicle was then entrusted to a third party insured by Union Insurance Company. During operation by that third party, the loaned vehicle was in an accident, and State Farm paid claims from that accident. Union rejected State Farm's demand for a part of the amounts paid by State Farm. The provisions of the policy issued by each of the insurance companies defined its coverage as "excess" in view of the character of the automobile in the accident, that is, a "temporary substitute" vehicle (State Farm) vis-a-vis a "non-owned" automobile (Union). This court stated:

> Although expressed in varying language, it seems to us clear that each company intended that if there were other insurance covering the loss, its coverage would be "excess." Both policies evidence the same intent with respect to insuring the risk and also with respect to avoiding liability in the event of adequate coverage by another carrier. If literal effect were given to the clauses in both policies, the result would be that neither policy covered the loss, and thus produce an unintended absurdity. It seems to us more important that each company in drafting its policy contemplated various types of situations which were likely to arise where the operation of a vehicle would probably be covered by other insurance.
>
> . . . .
>
> The excess insurance provisions are mutually repugnant and as against each other are impossible of accomplishment. Each provision becomes inoperative in the same manner that such a provision is inoperative if there is no other insurance available. Therefore, the

general coverage of each policy applies and each company is obligated to share in the loss.

181 Neb. at 258, 147 N.W.2d at 762-63.

In this case, the excess insurance ("Other Insurance") provisions are mutually repugnant and as against each other are impossible of accomplishment. Under the circumstances of this case, the policy provision regarding "excess" underinsured motorist coverage is rendered inoperative and must be disregarded so that the underinsured motorist coverage of each of Farm Bureau's policies applies to the extent of the stated limit of liability found in each of those policies. The district court's finding and judgment that there was no "other insurance" is correct and is affirmed.

The district court's judgment concerning Farm Bureau's limit of liability under the underinsured motorist coverage provided by each of its policies is modified, that is, the limit of liability is $25,000 for each of the Farm Bureau policies, for a total liability of $50,000, and, as modified, the district court's judgment is affirmed.

As a part of the costs and pursuant to Neb. Rev. Stat. § 44-359 (Reissue 1984), Farm Bureau shall pay $5,000 as a fee for the services of the personal representative's counsel in this court.

AFFIRMED AS MODIFIED.

WHITE, J., dissenting.

The majority has, without explanation, prohibited appellee from "stacking" the two underinsured motorist coverages which were purchased from Farm Bureau. I am compelled to dissent from the result rendered by the majority because I do not believe our case law, statutes, or the insurance policy language dictates such a result.

Nebraska's Underinsured Motorist Insurance Coverage Act, Neb. Rev. Stat. §§ 60-571 to 60-582 (Cum. Supp. 1986), is inapplicable to this case. In the absence of applicable statutory direction, this case is controlled by this court's past decisions. I have no quarrel with the majority's assertion that "the rationale of *Kracl* and *Charley* applies as well to the underinsured motorist coverage in the case before us." However, neither *Kracl v. Aetna Cas. & Surety Co.*, 220 Neb. 869, 374 N.W.2d 40

(1985), nor *Charley v. Farmers Mut. Ins. Co.*, 219 Neb. 765, 366 N.W.2d 417 (1985), supports the conclusion that the underinsured motorist coverage provisions of these two separate policies may not be aggregated.

*Kracl* and *Charley* established the legal principles which today govern the "stacking" of multiple *uninsured* motorist coverages. It was held that whether multiple uninsured motorist coverages are to be aggregated depends upon the policy language. Further, an insurer may, by contract, limit its liability as long as it does not violate public policy. In short, these cases provided that an insurance company may, by contract, prohibit "stacking" by clear and unambiguous language within a policy. This case turns entirely on the language, as drafted by the insurer, used to limit liability within each of two policies issued by one insurer. A review of prior case law and Farm Bureau's liability limiting policy language points to one result: Nothing in these policies prohibits appellee from "stacking" these underinsured motorist coverage limits.

The cases in which this court has denied "stacking" are clearly distinguishable from the case at bar. In *Kracl*, we held that two separate policies issued by two different insurers could not be stacked because nearly identical provisions in the policies limited the uninsured motorist coverage to the "covered" automobile within the particular policy.

In *Charley*, we affirmed the district court's decision that denied plaintiff the ability to "stack" two uninsured motorist coverages on two autos insured under one policy. We affirmed, based on policy language which limited liability to no more than $15,000 per person in any one accident.

In *Pettid v. Edwards*, 195 Neb. 713, 716, 240 N.W.2d 344, 346 (1976) (which this court reaffirmed in *Charley*), we held that policy language which limited liability "to the limit stated in the declarations as applicable to each person, *regardless of the number of automobiles to which the policy applied*," clearly prevented stacking of uninsured motorist coverages. That case involved one policy which insured two vehicles.

This court in *Pettid* explicitly noted the difference in case law where the facts involved separate policies issued by the *same* insurer. We also cited other jurisdictions which clearly

distinguished these types of cases. I am not unmindful that in *Kracl* we overruled two of our "same insurer, separate policies" cases; however, we did so only to the extent that they were contrary to the *Kracl* opinion. In other words, policy language still controls the question of stacking. In a case such as this, however, we must look at the two policies, with identical language, issued by one insurer.

Farm Bureau argues in its brief that the "Other Insurance" clauses in the policies are "antistacking" provisions. The majority correctly addresses the fallacy of this argument. I agree that in this case the "Other Insurance" provisions "are mutually repugnant and as against each other are impossible of accomplishment." There is simply no *clear* language in these policies which prevents "stacking." Farm Bureau could easily have added language such as that found in the policy reviewed in *M.F.A. Mutual Ins. Co. v. Wallace*, 245 Ark. 230, 231, 431 S.W.2d 742, 743 (1968). That policy contained an "Other Automobile Insurance in the Company" clause, which limited liability to the highest applicable limit under any one policy issued the insured by the company. See, also, *Menke v. Country Mutual Insurance Co.*, 78 Ill. 2d 420, 401 N.E.2d 539 (1980).

Absent clear policy language to the contrary, there is no reason to prohibit the aggregation of the two underinsured motorist coverages. I would have allowed the coverage to be aggregated for a total limit of liability of $100,000 and, after reduction by the State Farm payment, awarded $75,000 to Polenz from Farm Bureau. This method seems preferable to the majority's decision, which transforms a $25,000 award into a $50,000 award based largely on the fact that the Farm Bureau policies failed to address the allocation issue in cases where more than one policy is issued to the same insured. As we said in *Waylett v. United Servs. Auto. Assn.*, 224 Neb. 741, 747, 401 N.W.2d 160, 164 (1987), "[T]he court is not free to redraft the contract" between an insured and the insurer. The majority opinion has given Farm Bureau the benefit of the State Farm deduction twice, plus the benefit of a limit of liability based on one policy. Neither the policy language nor case law dictates such an inequitable result.

GRANT, J., joins in this dissent.