**Tony G. GARRIGA, Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Defendants.**

**Civ. A. No. 1:91–CV–208(R).**

United States District Court, S.D. Mississippi, S.D.

Jan. 22, 1993.

Vincent J. Castigliola, Jr., Pascagoula, MS, for plaintiff.

Peter C. Abide, Compton, Crowell & Hewitt, Biloxi, MS, for defendants.

## MEMORANDUM ORDER

DAN M. RUSSELL, Jr., District Judge.

This cause is before this Court on Motion of the defendant, Nationwide Mutual Insurance Company (hereinafter "Nationwide"), to Dismiss the Complaint, or in the Alternative, for Summary Judgment on all issues, pursuant to Rules 12(b) and 56(c), of the Federal Rules of Civil Procedure, respectively. As set forth by the defendant in its introduction to said Motion, this case involves a question as to whether uninsured motorists coverage on the vehicle involved in an accident should be considered "primary," while uninsured motorists coverage available to resident relatives should be considered "excess."

## FINDINGS OF UNCONTROVERTED FACTS

On October 2, 1987, the plaintiff, Tony Garriga (hereinafter "Mr. Garriga"), was involved in an automobile accident with Donald Howell (hereinafter "Mr. Howell"). Mr. Howell rear-ended the plaintiff's vehicle. The plaintiff contends that he was injured by this collision and has presented himself for medical treatment as a result of said accident. Mr. Garriga made a claim against Nationwide as an insured under his mother's policy for uninsured motorists limits for $100.000. Thereafter, Nationwide denied the claim as being premature and suit was filed by the plaintiff. (Exhibit A to Defendant's Motion to Dismiss).

The total liability coverage on Mr. Howell's vehicle, as tortfeasor, was $25,000. Mr. Howell's liability carrier, Aetna Insurance Company, has paid these limits to Mr. Garriga.

In addition to this liability coverage, Mr. Garriga has available to him uninsured motorists coverage from several sources. Firstly, Mr. Garriga maintained insurance on his automobile, a 1967 Ford Mustang, through Colonial Insurance Company of California (hereinafter "Colonial"). Mr. Garriga's policy No. MSA 035130 had uninsured motorists coverage in the amount of $10,000 per person, $20,000 per accident.

(Exhibit H to Defendant's Motion to Dismiss).

The Nationwide policy, No. 63 852469, covering the plaintiff's mother, Patricia Garriga's vehicles, a 1977 MG and a 1987 Honda, had uninsured motorists coverage in the amount of $50,000 per person, $100,000 per accident (Exhibit I to Defendant's Motion to Dismiss). Mr. Garriga would be an insured under this policy as a "resident relative."

Lastly, also residing with Mr. Garriga were his two brothers, Jerry and James Garriga. James Garriga maintained automobile insurance on his vehicle through Colonial and had uninsured motorists coverage in the amount of $10,000/$20,000 under Policy No. MSA 031872. Jerry Garriga also had coverage with Colonial with minimum uninsured motorists benefits under Policy No. MSA 03798 (Exhibits J and K to Defendant's Motion to Dismiss).

Nationwide submits that in total Mr. Garriga potentially has available to him $10,000 primary uninsured motorists coverage through his own policy and $120,000 excess uninsured motorists coverage through the various resident relatives. Nationwide further submits that a comparison of the liability and uninsured motorists coverage available reveals an underinsured motorists scenario. In the case cited as *Wickline v. United States Fidelity & Guaranty Co.*, 530 So.2d 708 (Miss.1988), the defendant submits that in the event Mr. Garriga can prove injuries and damages exceeding the $25,000 of the tortfeasor's liability limits, uninsured motorists coverage becomes applicable.

The record reflects that Mr. Garriga has declined to make a claim against his own uninsured motorists carrier, Colonial. He has also declined to include them as a defendant in this suit for uninsured motorists benefits. Nationwide submits that significantly, the plaintiff has declined to make a claim for primary uninsured benefits on the advice of counsel. (Exhibit E to defendant's Motion to Dismiss, page 28). Nationwide submits that, pursuant to policy language and Mississippi case law, coverage applicable to an insured vehicle must

be exhausted prior to a claim being made for other uninsured motorists coverages that might be applicable. Damages beyond these primary benefits must be shown to reach what are "excess" benefits.

Nationwide submits that since the plaintiff has elected to forego his pursuit of the primary uninsured motorists carrier, Colonial, Nationwide should be granted summary judgment.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this matter pursuant to 28 U.S.C. Sections 1332 and 1441. Furthermore, the defendant Nationwide brings this Motion pursuant to Rule 12(b) and 56 of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides in pertinent part the following:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

See *Shawnee International, N.V. v. Hondo Drilling Co.*, 742 F.2d 234 (5th Cir. 1984); *Finn v. Gunter*, 722 F.2d 711 (11th Cir.1984); *General Guaranty Ins. Co. v. Parkerson*, 369 F.2d 821, 822–23 (5th Cir. 1966).

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In *St. Amant v. Benoit*, 806 F.2d 1294, 1296–97 (5th Cir.1987), the Fifth Circuit addressed the law as regards summary judgment and stated that "[t]he mere existence of a factual dispute does not by itself preclude the granting of summary judgment. '[T]he requirement is that there be no *genuine* issue of *material* fact.' *Anderson v. Liberty Lobby*, 477

U.S. [242], [248] [106 S.Ct. 2505, 2510, 91 L.Ed.2d 202] (1986) (emphasis in original." (citations omitted).

The Fifth Circuit has addressed when an issue is genuine.

> [A]n issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

*Professional Managers, Inc. v. Fawer, Brian, Hardy & Zatzkis*, 799 F.2d 218, 222 (5th Cir.1986) (footnotes omitted).

The United States Supreme Court further stated in *Liberty Lobby* that as to materiality, "[o]nly disputes over the facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

The Supreme Court has noted that the standard for summary judgment mirrors the standard for a directed verdict, the main difference between the two being when they are used, as the inquiry under each is the same. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Barebones allegations are insufficient to withstand summary judgment because the opposing party 'must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response.'" *Howard v. Greenwood*, 783 F.2d 1311, 1315 (5th Cir.1986) (citing *Nicholas Acoustics & Specialty Co. v. H & M Construction Co., Inc.*, 695 F.2d 839, 845 (5th Cir.1983)).

Nationwide submits that there must be an exhaustion of the primary coverage before the excess insure and coverage becomes applicable and liable. The Nationwide policy issued to Mrs. Garriga contained the following provision in its uninsured motorists endorsement:

> 7. **Other Insurance.** With respect to bodily injury to an Insured while occupying an automobile not owned by the principal Named Insured, the insurance under this endorsement shall apply **only as excess insurance over any other similar insurance available to such Insured** and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

(Exhibit I to defendant's Motion to Dismiss). Nationwide uninsured motorists endorsement, section 7, page 13 (emphasis added).

Nationwide submits that applying this language to the facts at hand, it can be seen that the Nationwide policy is to be treated as "excess" over the benefits available to the insured from his own carrier, Colonial. The car that the plaintiff was driving was "owned by the principal named insured", *i.e.*, the plaintiff's mother, thereby making the "other insurance" provision applicable. Nationwide submits its coverage becomes excess and payable only upon a showing of damages sufficient to reach such excess benefits pursuant to this section 7 of the Nationwide uninsured motorists endorsement. *See, e.g., International Service Ins. Co. v. Ballard,* 216 So.2d 535, 541 (Miss.1968) (excess policy obligated only for damage accruing over and above obligation of primary). Nationwide submits that implicit within this application is the requirement that a claim be made for primary benefits. Nationwide submits that the "other insurance" clause has been addressed previously in the case of *Mississippi Farm Bureau Mutual Insurance Co. v. Garrett,* 487 So.2d 1320 (Miss.1986).

In *Garrett,* the insured was injured in an accident with an uninsured driver. The insured settled with the uninsured motorists insurer of the vehicle in which he was riding for less than the policy limits, then filed suit against his own uninsured motorists carrier, Farm Bureau. Farm Bureau denied the claim on the grounds that the primary uninsured motorists coverage had not been exhausted in the settlement and therefore could not reach the excess coverage. The court found that the amount accepted in settlement adequately fulfilled the "other similar insurance" requirement and allowed recovery above the settlement from the excess carrier. *Garrett,* 487 So.2d at 1324–25.

*Garrett* is cited in the case of *Washington v. Georgia American Ins. Co.,* 540 So.2d 22 (Miss.1989), and in *Washington,* the court states that the "other insurance clause" of the excess policy became viable only after a claim had been made against the primary uninsured motorists carrier.

> [The *Garrett* court] found that, realistically, the settlement of $7,517.00 qualified as "any other similar insurance available" to Garrett, and that he could, after settling for that amount, claim against Farm Bureau.

*Washington,* 540 So.2d at 24.

Nationwide submits that as reflected in these cases treatment of uninsured motorists coverages in this context mirrors that of liability coverage, *i.e.*, primary coverage on the vehicle must be claimed and substantially exhausted before triggering excess coverage. Nationwide also cites the Court to the case of *Gaught v. Evans,* 361 So.2d 1027 (Ala.1978) as being instructive. In *Gaught* the excess carrier Allstate denied a claim for uninsured motorists benefits because the primary uninsured motorists coverage on the vehicle had not been exhausted. In analyzing Allstate's argument the Alabama court found that the "other insurance" clause required such a result. The court stated:

> The principle of primary and secondary liability has long been included in automobile liability and is recognized by the courts of this state.... Such provisions are matters reasonably affecting premi-

ums charged and some protection against double recovery of damages.

. . . .

We therefore conclude that the insured is bound by the provision in his policy which provides that if the insured is injured by an uninsured motorist while in an automobile other than the owned automobile and such automobile has uninsured motorist insurance available to insured, such coverage shall be primary and coverage provided to the named insured shall be secondary and only as excess over the first.

*Gaught,* 361 So.2d at 1029, *quoting Almeida v. State Farm Mut. Ins. Co.,* 53 Ala. App. 175, 298 So.2d 260, 265 (Civ.App. 1974); (see also *Barnwell v. Allstate Ins. Co.,* 55 Ala.App. 447, 316 So.2d 696 (Civ. App.1975)) (concept of primary and excess coverage uninsured motorist policy does not deprive an insured of full benefits or limit liability of insurer but merely requires a beginning point for determining liability damages and receiving payment).

Nationwide further submits that *Gaught* is further authority for the granting of its Motion to Dismiss as it is compelling in that it gives effect to the contract provisions and furthers the primary/secondary coverage principle, and in no way conflicts with the uninsured motorists statute.

The plaintiff in his response submits that both Nationwide and Colonial are liable to the plaintiff and rather the question here is whether the plaintiff must pursue one uninsured motorists benefits carrier before the other when both are liable to the plaintiff regardless of the order of payment. The plaintiff submits that the issue of whether or not an "other insurance" clause in the uninsured motorists provisions of an automobile insurance policy has any affect on the order of payment when more than one insurer is liable has yet to be decided in Mississippi and cites *Harris v. Magee,* 573 So.2d 646, 657 (Miss.1990).

The plaintiff Garriga submits (1) that since both carriers have identical "other insurance" clauses, both clauses should be held repugnant and disregarded, and (2) that since both insurers are liable for unin-

sured motorists benefits, they should be held jointly and severally liable, and, thus, the plaintiff may elect to pursue either one or both.

The plaintiff submits that the Mississippi legislature set out vigorously to protect persons uninsured and underinsured injured by uninsured and underinsured motorists by enacting section 83–11–101, 103, Miss.Code Ann. (Supp.1991). The plaintiff submits that those statutory provisions require automobile insurers to provide coverage to their insureds for the tortious acts of uninsured motorists.

The plaintiff submits that the Supreme Court of Mississippi has announced the undesirability of the so-called "excess insurance" clause. *Citing Harthcock v. State Farm Mut. Auto. Ins. Co.,* 248 So.2d 456, 462 (Miss.1971). In *Harthcock,* the court stated in pertinent part:

> The statute requiring the coverage does not say how much uninsured motorists coverage shall be provided for each accident or each vehicle or each uninsured motorist. It requires **each policy** to provide the minimum coverage, and [the insurers] "other insurance" clause is in direct conflict with the statute and is, therefore, void.

*Id.,* 248 So.2d at 462 (emphasis in original). Accordingly, the plaintiff submits that "other insurance" clauses cannot be used to limit or absolve liability in Mississippi.

It is the plaintiff's contention that Nationwide is attempting to use its "other insurance" clause to delay its liability to the plaintiff by arguing for some sort of ordering of payment; however, the plaintiff submits the fact is that the carrier which expressly covered the plaintiff's vehicle, Colonial, also has in its policy in issue "other insurance" clause identical to the Nationwide's clause at issue herein. The plaintiff submits that had Colonial been made a party to this action, the plaintiff would have been faced with competing "other insurance" clauses. The plaintiff also cites several cases for authority in other jurisdictions who, when faced with similar situations, have held that the clauses are repugnant and should be disregard-

ed. *Citing Polenz v. Farm Bureau Ins. Co.*, 227 Neb. 703, 713–14, 419 N.W.2d 677, 684 (1988); *North Carolina Farm Bureau Mutual Ins. Co. v. Hilliard*, 90 N.C.App. 507, 369 S.E.2d 386, 387 (1988).

The flaw in the plaintiff's argument in persuading the Court that these "other insurance" clauses would be held repugnant or disregarded is that as noted by the plaintiff himself, Colonial has not been made a party to this action and that other policy is not in issue. The plaintiff presents the Court with a scenario that is not similar to this case in its present posture. In *Polenz*, the facts are inapposite to the case at bar and that the insurance on the vehicle in which the claimant was riding had no uninsured motorists coverage. The court in *Polenz*, while finding mutual "other insurance" clauses to be repugnant, stated "[w]e realize that insurance on a vehicle in which the claimant is a passenger or a driver is generally considered as primary insurance coverage." *Id.*, 419 N.W.2d at 683. *Polenz* addressed uninsured motorists coverage is not associated with a covered vehicle and therefore its discussion of "other insurance" clauses cannot be taken as authority in the matter sub judice. Furthermore, a reading of *Polenz* indicates that if there had been uninsured motorists coverage on the vehicle, it would most likely be considered "primary." The court in *Hilliard*, while finding identical "excess" clauses to be mutually repugnant, recognized the distinction between primary and excess coverage in policies. In *Hilliard* the court stated, in pertinent part, the following:

> By making its policies "excess," each company attempted to limit the amount it must indemnify its insured when he is injured in an non-owned vehicle ... Excess insurance clauses generally provide "that if other valid and collectible insurance covers the occurrence in question, the excess policy will provide coverage only for liability above the maximum coverage of the primary policy." When "excess" clauses in several policies are identical and determination of which policy is primary is impossible, the clauses are

deemed mutually repugnant and neither excess clause will be given effect.
*Id.*, 369 S.E.2d at 388.

As noted by Nationwide, application of the holdings in *Polenz* and *Hilliard* would be appropriate only (1) where there is no uninsured motorists coverage available on the vehicle which the injured party is occupying, and (2) where other uninsured motorists benefits are available to the insured and it is impossible to determine which should take priority. Furthermore, the Court notes, as Nationwide points out, that in contrast to the "mutually repugnant" language quoted by the plaintiff, the Mississippi court recognized in *Garrett* the validity of an "other similar insurance clause." *Id.*, 487 So.2d at 1323.

The plaintiff's other argument in opposition to Nationwide's Motion to Dismiss is that where two carriers are both liable for uninsured motorists benefits, they are jointly and severally liable, and a claimant may elect either one or both. The plaintiff submits that when he was injured in the automobile accident in issue by an uninsured motorist, both Nationwide and Colonial were liable to the plaintiff for uninsured motorists benefits, and both were jointly and severally liable to the plaintiff. The plaintiff submits that he may elect against either one or both and that in the instant suit, he has not made Colonial a party.

The plaintiff cites *Bazinet v. Concord General Mutual Ins. Co.*, 513 A.2d 279, 281 (Me.1986), for the proposition that the plaintiff has a right to proceed against whichever liable party he chooses. Part of the language cited by the plaintiff in *Bazinet* provides that "[t]he liability of insurance carriers is joint and several in cases where there are two or more insurance policies applicable to the same loss.... Under this rule, an insured has the right to proceed against any and all the carriers who may be liable to him up to the stated policy limit, and any excess/primary distinction sought to be drawn by insurer has no bearing on that right." *Id.*

The Court does not find that the *Bazinet* case lends any weight to the plaintiff's

argument as it does not appear to recognize any distinction between insurers despite contractual language to the contrary. Mississippi, on the other hand, does give effect to the distinctions between primary and excess insurers as evidenced in *Garrett, supra.* Furthermore, under Mississippi law, the basis for joint and several liability is statutory and the language of the statute speaks to "joint tortfeasors." *See* former Miss.Code Ann. Section 85–5–5 (1972 and 1988 Supp.) (repealed by laws 1989, ch. 311 Section 6, eff. from and after July 1, 1989) and present Miss.Code Ann. Section 85–5–7 (1989 and 1991 Supp.). The plaintiff submits that this Court should adopt a holding as that taken by the Maine court and disregard the "other insurance" clause as having any bearing on the plaintiff's right to choose against he will proceed. Contained within the quoted paragraph of *Bazinet* are several cases which are purported to support plaintiff's "pick and choose" argument. The Court agrees with the defendant that these cases involved primary carriers who settled with the injured party. Since we lack that participation from Colonial in this case, these cases cited within *Bazinet* do not have any bearing on Nationwide's Motion for Summary Judgment.

The Court would note, as the defendant cites, the case of *Jaworski v. Motor Club of America Ins. Co.,* 182 N.J.Super. 651, 442 A.2d 1091 (1981), which was cited in *Bazinet.* The defendant submits that alternatively should the Court find the Maine authority to be applicable that Nationwide would then argue that the plaintiff's election to forego recovery from its primary uninsured motorists insurer should not change the nature of the relationship between Nationwide and Garriga from excess to a primary insurer. Nationwide submits that it never contemplated the issuance of a "drop-down" policy which is what the plaintiff is now seeking to do.

In support of this alternative argument, Nationwide points out that in *Jaworski* the court held that an injured passenger could elect to proceed against her own insurer without pursuing the driver's policy benefits; however, in reaching this conclusion,

the court commented first upon the fact that a plaintiff's reluctance to join all available insurers to obtain their benefits was "puzzling." The court further stated that:

> The insured Jaworski and her insurer Motor Club of America agreed in the policy that "... with respect to bodily injury to an insured while occupying an automobile not owned by the named insured, the insurance ... shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such auto as primary insurance...." Thus while the insured may have had the right to file her demand only against MCA, MCA had the right under the policy to accept responsibility or prove that another insurance carrier was primarily liable. **Where other primary coverage can be shown the insured agreed in the policy to accept that coverage and recover only excess damages from MCA.**

*Id.,* 442 A.2d at 1094. (emphasis added).

The Court agrees with Nationwide that under *Jaworski,* the plaintiff does not have to make a claim against a particular insurance, but the court did give effect to the policy language requiring recognition of another insurer has primary liability. Nationwide asks that a reading of *Jaworski* be interpreted to show that its contract should be given its intended effect as in *Jaworski* the language was used that where "other primary coverage can be shown, the insured agreed in the policy to accept that coverage and to recover only excess damages from MCA;" therefore, Nationwide would ask that its contract be given its intended effect and that the Court hold that if the plaintiff makes no claim against Colonial in this cause at this time, that Nationwide has no duty to pay until the plaintiff establishes his damages exceeds $35,000 ($25,000 from Aetna plus $10,000 from Colonial).

## CONCLUSION

 The Court agrees with Nationwide that although the plaintiff recognizes that Colonial will be required to participate in settlement of the claim in issue, there has

**464**

been no attempt to include them in this lawsuit by the plaintiff. The Court agrees that Mississippi case law reflects that coverage on the involved vehicle is primarily liable for uninsured motorists personal injury benefits. The order of payment is significant to all insurers who contracted for excess, as opposed to primary, liability under the terms of the policy in issue.

 In addition, Mississippi law applies joint and several liability to tort context and in the case sub judice the contract is not against public policy as it does not avoid any legal obligations for payment, and the contract provisions on "other similar insurance" should be given effect.

A reading of the contract which governs any primary liability owing to the plaintiff for uninsured motorists benefits reflects that primary liability must be proven before excess coverage, if any, becomes applicable.

The Court is of the opinion, as previously set forth herein, that because it has considered extraneous materials which could be construed under the Rule 12(b) and (b)(6) of the Federal Rules of Civil Procedure cited by the defendant Nationwide, that the standard of review should be converted to that governing motions for summary judgment. Accordingly, viewing all the facts in the light most favorable to the party opposing the motion, the Court finds that said Motion to Dismiss is well taken and should be granted, but the Court would point out that is it is not making a determination upon the merits of this cause as to what the plaintiff's damages are, if any, or as from whom any liability coverage is owed, if any.

IT IS THEREFORE ORDERED AND ADJUDGED that Motion of the defendant Nationwide Mutual Insurance Company to Dismiss the Complaint, or in the Alternative, for Summary Judgment is well taken and this matter is dismissed without prejudice.

SO ORDERED AND ADJUDGED.