**HOUSTON FIRE AND CASUALTY INSURANCE COMPANY, Appellant,**

v.

**Reba IVENS, as Administratrix of the Estate of Harold Ivens, Deceased, et al., Appellees.**

No. 20792.

United States Court of Appeals
Fifth Circuit.

Oct. 29, 1964.

---

See also 5 Cir., 323 F.2d 112.

Harry T. Gray, Jacksonville, Fla., Edward W. Killorin, E. Smythe Gambrell, Atlanta, Ga., Francis P. Conroy, Delbridge L. Gibbs, Jacksonville, Fla., John K. Train, III, Atlanta, Ga., for appellant, Marks, Gray, Yates, Conroy & Gibbs, Jacksonville, Fla., Gambrell, Harlan, Russell, Moye & Richardson, Atlanta, Ga., of counsel.

George A. Pierce, Jacksonville, Fla., Alan R. Schwartz, Miami, Fla., Marion R. Shepard, John E. Mathews, Jacksonville, Fla., Walter H. Beckham, Miami, Fla., Noah H. Jenerette, Jr., Mathews, Osborne & Ehrlich, Jacksonville, Fla., Nichols, Gaither, Beckham, Colson & Spence, Miami, Fla., for appellees.

Before TUTTLE, Chief Judge, WISDOM, Circuit Judge, and McRAE, District Judge.

McRAE, District Judge.

Houston Fire and Casualty Insurance Company ("Houston") brought suit for a declaratory judgment against the defendants, requesting a determination of its liability under a policy of aviation insurance issued to its assured, Harold Ivens ("Ivens"), with respect to an airplane crash of the Beechcraft airplane described in the policy and operated by Ivens.

The crash, which occurred on February 24, 1961, near Aiken, South Carolina, resulted in the death of Ivens, the pilot, and John Z. N. Fletcher ("Fletcher") and Earl Douglas Taylor, who were passengers in the airplane.

Defendants are the personal representatives of the victims of the crash, and N. M. Ulsch & Son, Inc. ("Company"), an additional assured, whose relationship to Ivens and Fletcher will be hereinafter described.

It was the contention of Houston that the trip on which the accident occurred was an operation for which a charge was made, in violation of the following provision of the policy:

"Item 5. Purposes. This policy applies only while the aircraft is used for the purposes classified as pleasure and business (a) the terms 'Pleasure and Business' is defined as personal, pleasure, family and business uses *excluding any opera-*

*tion for which a charge is made;*
*\* \* \* "*. (Emphasis added.)

The District Court entered "Summary Judgment, and Summary Final Judgment" for the defendants severally on the basis of two conclusions: (a) that the testimony offered by Houston to prove that the operation of the airplane was one for which a charge was made could not be received in evidence because of the Florida "Dead Man's Statute", F.S. 90.05, F.S.A.; [1] and (b) that even if the testimony were received in evidence, such testimony, together with all reasonable inferences to be drawn from it, failed to establish that a charge was made for the fatal flight. *Appeal was taken by* Houston from this final judgment.

Houston conceded in the court below that the sole proof to be offered in establishing that the fatal flight was an operation for which a charge was made was a telephone conversation between N. M. Ulsch, Sr. ("Ulsch") and Ivens.

Proof was offered, by deposition of Ulsch, that he was president and principal stockholder of the Company; that the Company was the distributor in Florida of sanitation equipment manufactured by Dempster Brothers of Knoxville, Tennessee; that during the period 1960–61, Ivens was "an independent contractor working independently" for the Company in making sales in Florida of Dempster Brothers products strictly on a commission basis; that Fletcher, representing "Waste Control of Florida", was a customer of the Company.

Subject to objection by the attorney for the administratrix of the estate of Ivens, based upon the contention that admission of the testimony was barred by the Florida "Dead Man's Statute", Ulsch further testified that about four days before the fatal flight Ivens in Orlando telephoned Ulsch in Jacksonville and told Ulsch that he had agreed to take Fletcher from Jacksonville to Knoxville, in the airplane owned and operated by Ivens, for the purpose of enabling Fletcher to get a piece of equipment which Fletcher had bought from the Company prior to the time that Ivens became a representative of the Company in Florida. Ivens asked Ulsch if he would "contribute a little towards the gasolene money that it was going to take to carry Mr. Fletcher from Jacksonville to Knoxville, and I asked him how much did it take." Ivens said that the gas would cost about $10.00 per hour flying time and that the round trip would take about six hours for a total gasolene cost of $60.00. Ulsch told Ivens that he would be glad to contribute to the cost of the gasolene, as Ivens "was not getting any commission on this \* \* \* ". Ulsch further stated in his deposition that he had not agreed to contribute to the cost of the gasolene from Orlando to Jacksonville, and that he had not agreed to "help pay the expenses of the flight"; on the contrary, he stated, "I talked to Mr. Ivens about expenses and he never asked me for a nickel of expenses other than he asked me to contribute to gasolene only".

---

1. *"90.05 Witnesses; as affected by interest.* No person, in any court, or before any officer acting judicially, shall be excluded from testifying as a witness by reason of his interest in the event of the action or proceeding, or because he is a party thereto; provided, however, that no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through or under whom any such party, or interested person, derives any interest or title, by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and a person at the time of such examination deceased, insane or lunatic, against the executor, or administrator, heir at law, next of kin, assignee, legatee, devisee or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, survivor or committeeman shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence."

No payment was ever made by Ulsch or the Company to anyone for gasolene used on the trip.

In view of the conclusion reached by this Court with reference to the deposition testimony of Ulsch, it is unnecessary to construe, or to apply to the facts of the present case, the tortuous and murky language of the Florida "Dead Man's Statute". When such testimony of Ulsch is considered in its entirety and in the light most favorable to Houston, this Court concurs in the opinion of the lower court that it fails to establish that a charge was made by Ivens for the flight. Accordingly, no opinion is expressed on the question of whether the admission of such testimony would be barred by the Statute.

The pertinent provision of the policy is unambiguous, and no issue is raised as to its legality as a limitation upon the liability of Houston. If the flight in question was one "for which a charge is made", there would be no coverage.

■ It is the opinion of the Court that when a charge is made for something, there is the distinct connotation that there is a *quid pro quo*. A charge may thus be considered as the price demanded for a thing or service. The agreement of Ulsch was merely the offer of a contribution made to help Ivens defray the cost of the gasolene.

In support of its motion for summary judgment, the Company submitted a sworn statement of Billy M. Tinder, an experienced and knowledgeable pilot, who stated that the charter rate of an airplane of the type involved in the present case would be approximately $43.00 an hour. The Company also submitted the affidavit of Irving L. Jones, a qualified witness, in support of its motion for summary judgment. Jones stated that the charter rates would be $38.00 per hour when such plane is chartered with a pilot, or approximately $33.00 per hour when such plane is chartered without a pilot. The applicable charter rates, as given by Tinder and Jones, were uncontradicted.

The proposed contribution by Ulsch of $10.00 an hour toward the cost of the gasolene was manifestly only a fractional part of the expenses of the flight, and fell far short of the applicable charter rates.

It is clear on the record that Ivens and Fletcher had planned the flight independently and before Ulsch knew anything about it, and that Ulsch had nothing to say about when or how the flight would be made. The agreement of Ulsch to contribute $60.00 toward payment of the cost of the gasolene was a voluntary gesture on his part, based upon his feeling that this was the fair thing for the Company to do since Ivens was not to receive a commission for the sale of this equipment to Fletcher. There was no obligation on the part of Ulsch or on the part of the Company to provide Fletcher with transportation to Knoxville to pick up the equipment.

None of the cases cited by the parties on either side appears to be directly controlling in the present case. Policy provisions with language directed to "transportation for hire" and "transportation for consideration" deal with the same subject matter as the Court has before it in the present case, but the difference in wording requires a fresh evaluation of the language used in Houston's policy.[2]

■ Based upon the record before it, the Court is of the opinion that the offer of Ulsch to contribute $60.00 toward payment of the cost of the gasolene was not a charge within the meaning of the policy, and that the fatal trip was not an "operation for which a charge is made". There

2. The following cases, among others, relied upon by Houston, are distinguishable in fact or in law, and are not controlling in the present case: Craig Funeral Home v. State Farm Mutual Auto. Ins. Co., 254 F.2d 569 (5th Cir. 1958); Travelers Insurance Company v. State Farm Mutual Auto. Ins. Co., 274 F.2d 208 (5th Cir. 1960), affirming opinion of the District Court in 175 F.Supp. 673; State Farm Mutual Auto. Ins. Co. v. Self, 93 F.2d 139 (5th Cir. 1937).

being no genuine issue as to any material fact, summary judgment was properly entered for defendants.

Order of the District Court Granting Motions for Summary Judgment, and Summary Final Judgment is hereby

Affirmed.