Argued October 13, 1972, affirmed as modified January 19, 1973

CAMMACK, *Respondent, v.* AVEMCO
INSURANCE COMPANY, *Appellant.*

505 P2d 348

*Lloyd B. Ericsson,* Portland, argued the cause for appellant. With him on the briefs were Dusenbery, Martin, Bischoff & Templeton, Portland.

*Floyd Hinton,* Portland, argued the cause for respondent. With him on the brief were Deich, Deich and Hinton, Portland.

Before O'CONNELL, Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE and HOWELL, Justices.

DENECKE, J.

The primary issue is whether the loss of plaintiff's airplane is covered by the insurance policy issued by defendant. The facts were introduced by stipulation, deposition, statement and affidavit. The trial court, sitting without a jury, held the loss was covered by insurance and the insurer appeals.

The plaintiff owned a Cessna 172 airplane. The policy provided coverage for the use of the plane for business and pleasure, "* * * but excluded (a) instruction of any person not specified by name in item 10 below, or (b) any operation for which a charge is made." Defendant contends the plane was destroyed when it was in an "operation for which a charge is made."

Plaintiff, paying no tie-down fee, kept his plane at an airstrip owned by his uncle. Plaintiff permitted his uncle and cousin, both pilots, to fly the plane and they agreed to pay $10 per flying hour, with plaintiff furnishing the gasoline. Plaintiff flew the plane seven or eight hours and his relatives and one Rutledge

flew it about 24 hours. Rutledge was a friend of plaintiff's uncle and so plaintiff agreed to let him fly it on the same terms as extended to his relatives. Plaintiff received payment from Rutledge and his uncle but not from his cousin. Rutledge was flying when the plane crashed.

Plaintiff testified he agreed to the use of his plane for $10 per hour because of his relationship with his uncle, his permission to keep the plane at his uncle's strip, friendship and his desire that the plane be used since long idleness was bad for the plane. Plaintiff computed that it cost him $27 per flying hour. He regarded the $10 per hour as helping "defray the immediate costs of flying the airplane."

The direct operating cost of using this plane was $7.25 per hour, including gasoline. Direct operating costs are those costs which are dependent upon the number of hours flown. They do not include costs such as insurance premiums or depreciation which are incurred whether or not the plane is flown. This type of plane charters for a rate of from $17 to $30 per hour.

The exclusion in defendant's policy, or one somewhat similar in intent, is apparently in common usage, judging from other decisions.

In *Thompson v. Ezzell*, 61 Wash2d 685, 379 P2d 983 (1963), the exclusionary clause read: "[*E*]*xcluding any operation or flight for which a charge is made ('share expense' flights shall not be considered as being made for a charge),* dual or solo instruction (except instruction to the Named Assured) and rental to others; \* \* \*." 61 Wash2d at 691. Ezzell was the insured. He and his wife and four Thompsons went on a trip. It was estimated that about $400 as rental would have to be paid to the flight club which owned

the plane. This included the cost of fuel. It was agreed Thompson would contribute $375 to expenses which would include plane rental and such other things as food, overnight accommodations, etc. The court affirmed a summary judgment against the insurer, holding the contribution by Thompson was a sharing of the expense, not the payment of a charge.

*Houston Fire & Casualty Insurance Co. v. Ivens,* 338 F2d 452 (5th Cir 1964), involved a clause identical to the one in the present case. The insured pilot was going to fly the company's customer to pick up a part sold to the customer by the company. The pilot asked the company if it would pay $60 for the gas for the 6-hour flight and the company agreed. The charter rate for this plane was about $40 per hour.

The court held there was no charge. It stated:

> "It is the opinion of the Court that when a charge is made for something, there is the distinct connotation that there is a *quid pro quo.* A charge may thus be considered as the price demanded for a thing or service. The agreement of Ulsch was merely the offer of a contribution made to help Ivens defray the cost of the gasolene." 338 F2d at 455.

The policy construed in *Fidelity & Cas. Co. of N.Y. v. Crist, etc.,* 248 Ark 1010, 455 SW2d 904 (1970), contained a clause stating: " 'The coverage afforded by this policy shall not apply while the aircraft is used for any purpose for which the named insured directly or indirectly makes a charge to others * * *.' " 248 Ark at 1011. Freeling was a prospective customer for the purchase of the plane. He wanted to fly it a few hours before deciding whether to buy. He offered to pay $15 per hour while he flew it, which offer was accepted by the insured. If Freeling pur-

chased the plane, the $15-per-hour charge would be forgiven. The direct costs of operation were about $14 per hour. The charter rate would be about $25 per hour.

The court affirmed a judgment rendered on a verdict for the insured, holding that whether the $15-per-hour price was a charge for the use of the plane was a jury question. "There was evidence that the $15 per hour agreed upon was reimbursement of expenses rather than charges for the use of the aircraft. 248 Ark at 1021.

The cases do not discuss the reason why insurers insert this exclusion. The defendant states that the purpose is to restrict the insurer's risk. The defendant reasons that although the policy covers gratuitous use, the usual owner will not frequently loan his plane gratuitously because flight costs are high; on the other hand, if the owner makes a profit on a flight, or at least does not take a loss, he is more apt to loan it and increase the number of flights and, therefore, increases the insurer's risk.

If that were the rationale, the clause has only partially achieved its purpose as the above cases have held that if the payment or promised payment was only a payment or sharing of expenses, it is not a "charge."

This exclusionary clause appears similar to the exclusionary clause in automobile coverage which provides that the insurance does not apply "while the owned automobile is rented or leased to others * * *." In *Christensen v. State Farm Auto. Ins.*, 52 Hawaii 80, 91, 470 P2d 521 (1970), the court interpreted this clause:

"On balance, we think that the language of the

policy excludes coverage only where a rental is commercial in nature. Visualizing a spectrum between simple permissive use (which clearly is covered under the policy) and commercial rental for a profit (which clearly is excluded), we view the present facts as being more in the nature of permissive use. * * *."

The decision was that the payment of $10 a week by a friend for the use of the car for three weeks while the insured was gone did not constitute a "renting." Other decisions to the same effect are cited at 7 Appleman, Insurance Law and Practice, 453, § 4436 (1962).

■ In light of these decisions we construe the transaction to be a payment of expenses in a noncommercial context and we agree with the trial court that Rutledge's use was not "any operation for which a charge is made."

■ The trial court awarded plaintiff attorney's fees in the amount of $1,600. Defendant contends it was not stipulated that the trial court could fix attorney's fees without the introduction of evidence and no evidence was introduced. Attorney's fees are awardable pursuant to ORS 743.114 as costs. Unless stipulated to the contrary, an award of attorney's fees must be based upon evidence of their reasonableness. *State ex rel Nilsen v. Adams,* 248 Or 269, 277, 431 P2d 270, 433 P2d 831 (1967). After defendant objected that there was no evidence of reasonableness the plaintiff, nevertheless, did not put on such evidence. With this void, the only fee that can be awarded is one determined by the Oregon State Bar recommended minimum fee schedule, which would be the amount of $650 and to which amount defendant stipulated.

The judgment, as modified to provide for an attorney's fee of $650, is affirmed.

McALLISTER, J., dissents.