MARY MENDENHALL AND DEANNA NICODEMUS, PERSONAL
REPRESENTATIVES OF THE ESTATE OF DENISE WEMPEN,
DECEASED, APPELLEES AND CROSS–APPELLANTS, V. DALE
GRANTZINGER, DEFENDANT AND THIRD–PARTY PLAINTIFF,
APPELLANT, AND STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY, A CORPORATION, THIRD–PARTY DEFENDANT, APPELLEE
AND CROSS–APPELLEE.

546 N.W.2d 775

Filed April 19, 1996.   No. S–94–059.

John O. Sennett, of Sennett and Associates, for appellant.

David W. Jorgensen, of Nye, Hervert, Jorgensen & Watson, P.C., for appellees Mendenhall and Nicodemus.

Martin J. Troshynski, of Kelley, Scritsmier & Byrne, P.C., for appellee State Farm.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

State Farm Mutual Automobile Insurance Company (State Farm) denied coverage on a policy of automobile liability insurance issued to Dale Grantzinger. The Custer County

District Court granted summary judgment in favor of State Farm. Grantzinger appeals, and the personal representatives of Denise Wempen's estate cross-appeal.

## SCOPE OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Western Sec. Bank v. United States F. & G. Co.*, 248 Neb. 679, 539 N.W.2d 15 (1995); *Horace Mann Cos. v. Pinaire*, 248 Neb. 640, 538 N.W.2d 168 (1995).

## FACTS

On March 25, 1989, Grantzinger acquired a BMW motorcycle. Grantzinger and Wempen were riding the motorcycle on April 2, and as Grantzinger was slowing down to make a turn, he and Wempen were thrown to the ground. Wempen died a few days later as a result of the injuries caused by the accident. At the time of the accident, Grantzinger did not have an insurance policy which specifically listed the BMW.

When Grantzinger acquired the BMW, he owned seven other motorcycles: a 1980 Honda Goldwing, a 1978 Moto Guzzi, a 1978 Kawasaki KE250 dirt bike, a Honda 250 dirt bike, assorted pieces of two BSA motorcycles, and a Honda SL70 minibike. Only the Honda Goldwing and the Moto Guzzi were specifically insured by State Farm at the time the BMW was purchased.

On March 12, 1990, the personal representatives of Wempen's estate, Mary Mendenhall and Deanna Nicodemus (collectively referred to as "Mendenhall"), filed a wrongful death action against Grantzinger in Custer County District Court. Grantzinger made demand upon State Farm for coverage under the "newly acquired car" provision of his insurance policy.

The "newly acquired car" provision had been converted into a "newly acquired motorcycle" provision by State Farm's motorcycle coverage endorsement No. 6279ZZ, which provided: "The definition of *car* is changed to read: '*Car* — as

used in Sections I, II, III and V means a 2-wheel land motor vehicle with wheels in tandem. . . .' ". (Emphasis in original.)

The liability section of the policy stated its coverage as follows:

> We will:
>
> 1. pay damages which an *insured* becomes legally liable to pay because of:
>
> a. *bodily injury* to others, and
>
> b. damage to or destruction of property including loss of its use,
>
> caused by accident resulting from the ownership, maintenance or use of *your car;* and
>
> 2. defend any suit against an *insured* for such damages with attorneys hired and paid by us. . . .
>
> . . . .
>
> **Coverage for the Use of Other Cars**
>
> The liability coverage extends to the use, by an *insured*, of a *newly acquired car* . . . .

(Emphasis in original.)

The "newly acquired car" provision read as follows:

> *Newly Acquired Car* — means a *car* newly owned by *you* or *your spouse* if it:
>
> 1. replaces *your car;* or
>
> 2. is an added *car* and:
>
> . . . .
>
> b. if . . . we insure all *cars*
>
> owned by *you* and *your spouse* on the date of its delivery to *you* or *your spouse* . . . .

(Emphasis in original.)

State Farm's answer alleged that the policy did not provide coverage to Grantzinger. State Farm argues in its brief on appeal that the newly acquired BMW did not qualify under the "newly acquired car" provision of the policy because State Farm did not insure all motorcycles owned by Grantzinger at the time of the purchase of the BMW.

Grantzinger testified by deposition regarding the operability of these other motorcycles. The Kawasaki dirt bike was kept in an old garage and "hadn't been run for a couple years." Grantzinger speculated that it would not have started the day of

the accident, because it had been sitting for 2 years and the gas would have been old. Grantzinger said that the carburetor clogged if the dirt bike sat for "any length of time," and he did not know if the tires were filled with enough air. He said that "[t]he fuel tank was full of rust on it," and he did not know if the dirt bike would run unless he replaced the fuel tank. Grantzinger said he had insured the dirt bike with State Farm for 1 to 2 years beginning in 1984. This was apparently the only time it was licensed.

Grantzinger's testimony regarding the condition of the Honda dirt bike was similar. He stated that it would not start and was in a similar condition to the Kawasaki. He could not recall the last time it had been ridden. Grantzinger testified that the BSA motorcycles were simply a collection of parts from two different motorcycles. He never put the parts together to form an operable motorcycle. Grantzinger stated that he bought the Honda minibike when his children were young and that it had not run since his children outgrew it. He estimated that it had not been started for 5 to 10 years and that it would require "quite a bit of work" to return it to operating condition. The Honda minibike was never licensed or insured.

Grantzinger filed a third–party petition against State Farm as his insurer under the policy covering the Honda Goldwing and the Moto Guzzi. Mendenhall also filed a claim against State Farm under the same theory.

Mendenhall, Grantzinger, and State Farm each moved for summary judgment. The trial court found that Grantzinger's ownership of the uninsured Kawasaki and Honda dirt bikes excluded coverage of the newly acquired BMW motorcycle and granted summary judgment in favor of State Farm. The court denied Mendenhall's and Grantzinger's motions for summary judgment. Grantzinger and Mendenhall appeal the summary judgment in favor of State Farm and the denial of their motions for summary judgment.

### ASSIGNMENTS OF ERROR

Mendenhall and Grantzinger assign essentially the same three errors: (1) The trial court erred in sustaining State Farm's motion for summary judgment, (2) the trial court erred in

finding that Grantzinger's uninsured motorcycles were "cars" under the terms of the "newly acquired car" provision contained in the policy of insurance issued by State Farm to Grantzinger and in finding that the BMW motorcycle owned by Grantzinger was not a newly acquired vehicle and was not insured by State Farm at the time of the accident, and (3) the trial court erred in overruling Grantzinger's and Mendenhall's motions for summary judgment.

## ANALYSIS

The issue presented is whether all the motorcycles owned by Grantzinger at the time the BMW was purchased were "cars" within the meaning of the "newly acquired car" provision of State Farm's insurance policy. In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Western Sec. Bank v. United States F. & G. Co.*, 248 Neb. 679, 539 N.W.2d 15 (1995); *Horace Mann Cos. v. Pinaire*, 248 Neb. 640, 538 N.W.2d 168 (1995). Summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *C.S.B. Co. v. Isham, ante* p. 66, 541 N.W.2d 392 (1996).

State Farm's insurance policy provided temporary coverage after the purchase of a new car even though Grantzinger had not yet obtained insurance specifically covering the newly acquired car. The policy required that in order for coverage to attach to the newly acquired car, or in this case motorcycle, "all cars owned" by Grantzinger had to be insured by State Farm at the time of the new acquisition.

State Farm claims that it is entitled to a summary judgment because not all of the motorcycles Grantzinger owned on March 25, 1989, were insured by State Farm. Grantzinger and Mendenhall claim that the "newly acquired car" provision of

the policy is ambiguous because the term "car" is susceptible of at least two reasonable but conflicting interpretations.

The trial court found that Grantzinger's ownership of the uninsured Kawasaki and Honda dirt bikes excluded coverage of the newly acquired BMW and cited *Rodriguez v. Government Employees Ins. Co.*, 210 Neb. 195, 313 N.W.2d 642 (1981). In *Rodriguez*, we discussed the rules that relate to contracts of insurance. We declined to hold that an operable but unlicensed automobile was not an automobile under the policy at issue in that case; however, we did not address whether an inoperable car was a "car" within the policy. It was undisputed that the car was operable, and to that extent, *Rodriguez* is distinguishable from the case at bar and is not controlling.

Other jurisdictions which have applied automatic coverage clauses in automobile insurance policies have concluded that the phrase "all automobiles owned by the named insured" do not contemplate a vehicle which is in such a position or condition that a reasonable person would not include it in a policy of public liability insurance. See, *Palmer v. State Farm Mut. Auto. Ins. Co.*, 614 S.W.2d 788 (Tenn. 1981); *Harshbarger v. Ins. Co.*, 40 Ohio App. 2d 296, 319 N.E.2d 209 (1974); *Luke v. American Family Mutual Insurance Company*, 476 F.2d 1015 (8th Cir. 1972); *Manns v. Indiana Lum. Mut. Ins. Co. of Indianapolis*, 482 S.W.2d 557 (Tenn. App. 1971); *Trippel v. Dairyland Mut. Ins. Co.*, 2 Wash. App. 318, 467 P.2d 862 (1970); *Lambert v. Alabama Farm Bureau Mut. Cas. Ins. Co.*, 281 Ala. 196, 200 So. 2d 656 (1967).

In *Luke*, the U.S. Court of Appeals for the Eighth Circuit wrote:

> Other courts construing the same provision have almost uniformly defined an owned automobile within the policy coverage as an operable automobile, one capable of being used on the streets and highways. [Citations omitted.] The ownership of an automobile which is junk or needs major repairs can hardly be thought to be ownership for liability insurance purposes "since the principal purpose of such insurance is to provide coverage for an automobile which is to be driven and which may become involved in an accident or other mishap." [Citation omitted.] Cases

which have differed from this view have usually done so where the car is temporarily inoperable and is being repaired for future service.

476 F.2d at 1018.

Based on our analysis of these cases and the policy in question, we conclude that the "all cars owned" provision is ambiguous. The provision is ambiguous as to whether its requirement that "all cars owned" be insured by State Farm includes all cars or only all operable cars.

The insurer, as the drafter of the policy, is responsible for language creating the ambiguity. The resolution of an ambiguity in an insurance policy turns not on what the insurer intended the language to mean, but on what a reasonable person in the position of the insured would have understood it to mean at the time the contract was made. *Malerbi v. Central Reserve Life,* 225 Neb. 543, 407 N.W.2d 157 (1987).

We therefore conclude that the phrase "all cars owned" relating to the "newly acquired car" provision of State Farm's policy does not contemplate a "car" which is in such a condition of operability that a reasonable person would not include it in a policy of automobile liability insurance.

Under the policy in question, there exists a material question of fact as to whether the motorcycles owned by Grantzinger are in such a condition of inoperability that a reasonable person would not have included them in a policy of automobile liability insurance. The district court erred in granting summary judgment in favor of State Farm.

For the reasons set forth herein, we deny any further relief requested by Mendenhall on cross–appeal. The terms of the insurance policy do not require us to conclude that the BMW motorcycle was insured by State Farm as a matter of law. We decline to consider whether public policy mandates that coverage be afforded to the BMW motorcycle under the facts of this case. The public policy issue was not assigned as error, and errors which are argued but not assigned will not be considered by an appellate court. See *Wolf v. Walt,* 247 Neb. 858, 530 N.W.2d 890 (1995).

## CONCLUSION

The district court's grant of summary judgment in favor of State Farm is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.